OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Cleveland Bar Association et al. v. Sterling.
[Cite as Cleveland Bar Assn. v. Sterling (1994),
Ohio St.3d        .]
Attorneys at law -- Misconduct -- Two-year suspension with
     final eighteen months stayed and attorney placed on
     monitored probation with conditions -- Engaging in conduct
     involving dishonesty, fraud, deceit or misrepresentation
     -- Neglecting an entrusted legal matter -- Failing to
     carry out contract of employment -- Failing to deposit
     client's funds in identifiable bank account separate from
     personal or professional account -- Failing to promptly
     satisfy or deliver money owed to client.
     (No. 93-2561 -- Submitted January 26, 1994 --
Decided March 30, 1994.)
     On Certified Report by the Board of Commissioners on
Grievances and Discipline of the Supreme Court, No. 92-36.
     In a complaint filed on June 22, 1992, relators, Cleveland
Bar Association and Cuyahoga County Bar Association, charged
respondent, Howard T. Sterling of Shaker Heights, Ohio,
Attorney Registration No. 0034274, with eleven counts of
disciplinary infractions.  The complaint charged respondent
with violation of the following provisions of the Code of
Professional Responsibility:  DR 1-102(A)(4) (engaging in
conduct involving dishonesty, fraud, deceit or
misrepresentation); 6-101(A)(3) (neglecting an entrusted legal
matter); 7-101(A)(2) (failing to carry out a contract of
employment); 9-102(A) (failing to deposit funds of a client in
an identifiable bank account separate from his own personal or
professional account); and 9-102(B)(4) (failing to promptly
satisfy or deliver money owed to a client).
     Relators further charged that respondent violated Gov.Bar
R. V(5)(a), now V(4)(G) (failing to cooperate with
investigations of ethical complaints) by his initial failure to
assist the Cleveland Bar Association Certified Grievance
Committee in its investigation of his alleged acts of attorney
misconduct.
     On April 30 and August 20, 1993, hearings were held before
a panel of the Board of Commissioners on Grievances and

Discipline of the Supreme Court.  Respondent stipulated to most of the factual allegations of the complaint but denied that he violated any Disciplinary Rule.  The panel additionally allowed testimony and documentary evidence.  From the stipulation, testimony and exhibits, it is evident that from 1984 through 1991, respondent entered into various contracts to provide legal services for several clients in civil matters and then neglected to perform promised services and misrepresented what he had done.  Additionally, respondent failed to promptly refund the retainers to which his clients were entitled due to respondent's inaction.

In Count I, for example, the complaint alleges that on March 18, 1988, Calvin Streeter hired respondent to represent him in an employment discrimination matter against the Hupp Company.  Streeter paid respondent a $750 retainer to be applied towards a contingent fee.  Respondent subsequently advised Streeter that he had sent a letter to the Hupp Company indicating his representation of Streeter.  Respondent further advised Streeter that if he failed to achieve results within ten days, respondent would file suit.  Streeter later paid respondent an additional $900 to represent his friend, Kathy Smith, in a sex discrimination suit.  Respondent made the same representations concerning a second letter he would send to the Hupp Company.  The Hupp Company failed to respond to respondent's letters, and respondent gave Streeter several excuses, e.g., illness and domestic problems, as to why he had not filed suit in either case.  Streeter then contacted another attorney and was told that the statute of limitations had expired on both his and Smith's cases before Streeter had hired respondent.  Streeter requested return of the $1,650, but respondent failed to return the money.  As of November 19, 1993, respondent admitted he still owed Streeter $450 and Smith $800.

In Count VI, it is alleged that Patrick and Mary Barnes hired respondent to represent their son, Anthony Cordell Standford, in a child support matter in juvenile court.   The Barneses paid respondent $300 in attorney fees; however, respondent did not provide any legal services.

Similarly, Count IX alleges that in December 1988, Fredrick Isaac retained respondent to open an estate for his deceased mother and to file a medical malpractice action against Cleveland Clinic.  Isaac paid respondent $350 for attorney fees.  Respondent never opened the estate or filed the malpractice claim, even though he had represented otherwise to Isaac.  As of November 19, 1993, respondent still owed Isaac $100.

Additionally, Counts V, VII, and VIII allege that respondent failed to deposit client funds in an identifiable bank account separate from his personal and professional funds.  In Count V, for example, the complaint states that Frank and Josephine Watts retained respondent in March 1989 to handle their uninsured motorist insurance claim.  Respondent settled their claim for $4,000 and the Wattses signed the necessary releases and endorsed the $4,000 insurance draft.  Respondent informed the Wattses that he would deposit the draft in his bank account, and when the draft cleared, respondent would issue them a check for their share of the settlement

proceeds. On July 10, 1989, respondent deposited the $4,000 insurance draft in his bank account, which was not an IOLTA trust account. On July 11, 1989, a creditor of respondent attached his bank account in the amount of $3,982.65. Respondent then told Mr. and Mrs. Watts that the Internal Revenue Service had frozen his bank account. Respondent paid part of the money back to the Wattses but, as of November 19, 1993, still owed them $2,268. As of that date, respondent owed his ex-clients a total of $3,838.

In mitigation, respondent testified that when most of the events charged in the complaint occurred, he suffered from alcoholism and experienced domestic problems that ultimately led to his divorce in 1989. He thought that both his domestic and alcohol problems were connected with his service as an intelligence officer in Vietnam. According to respondent, he had received counseling in the past and had not consumed any alcohol since 1987. Two judges testified that respondent had always exhibited professional competence in his representation of clients before them.

The panel concluded that respondent had committed all of the charged violations of the Code of Professional Responsibility. (Relators had withdrawn Count III, which involved the alleged violation of former Gov.Bar R. V[5][a].) Relators recommended that respondent be suspended from the practice of law for two years in Ohio, with eighteen months of that term suspended, and that respondent be placed on monitored probation. The panel recommended that respondent be suspended from the practice of law for one year, with the last six months suspended upon the following conditions: (1) respondent enter counseling programs for his alcohol dependence and emotional problems with an agency or agencies acceptable to relators; and (2) upon compliance with the first condition, if respondent is restored to the practice of law within the one-year period of suspension, his practice for the balance of the suspension be subject to monitoring by relators.

The board adopted the findings of fact and conclusions of law of the panel but not the panel's recommendation because of the number of counts involved and the fact that respondent still owed money to several clients due to his failure to perform promised legal work. The board recommended that respondent be suspended from the practice of law in Ohio for two years, with eighteen months of the suspension suspended and respondent placed on probation upon the following conditions: (1) respondent must enter into counseling programs for his alcohol dependence and emotional problems with an agency or agencies acceptable to relators; and (2) respondent must make complete restitution to his clients or the Clients' Security Fund during the first twelve months of the eighteen-month probationary period. The board further recommended that costs be taxed to respondent.

James T. Flaherty, Michael C. Hennenberg, Scott Rawlings and Thomas Escovar, for relators.
Darryl E. Pittman, for respondent.

Per Curiam. We concur in the board's findings and recommendation as modified. Accordingly, we suspend respondent

from the practice of law for two years; however, the final eighteen months of that suspension are stayed and respondent is to be placed on monitored probation under the following conditions effective during suspension and probation:  that respondent enter into counseling programs for his alcohol dependence and emotional problems with an agency or agencies acceptable to relators; that he attend such counseling programs on a regular basis, with compliance to be verified by relators; and that he make complete restitution to his clients during the first twelve months of the eighteen-month probationary period. Costs taxed to respondent.

Judgment accordingly.

A.W. Sweeney, Douglas, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

Moyer, C.J., dissents and would suspend respondent from the practice of law for eighteen months, but would stay the suspension and place respondent on probation.